**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Road Sprinkler Fitters Local Union No. 669, U.S., AFL-CIO; Michael J. Wingler, Joseph L. Patrick, James A. Ault, and Bradley R. Robinson,**

**Plaintiffs,**

v.

**Northstar Fire of America, Inc., Northstar Fire Protection, Inc., Northstar ATL, Inc., Northstar CHI, Inc., Northstar CMH, Inc., Northstar LAS, Inc., Northstar MSP, Inc., Northstar MW, Inc., Northstar NE, Inc., Northstar PHL, Inc., Northstar SFO, Inc., R. Colin Barnett, and Sean P. Barnett,**

**Defendants.**

**Civil No.00-2152 (JRT/SRN)**

**REPORT AND RECOMMENDATION**

---

William W. Osborn, Esq. and Richard A. Williams, Esq. on behalf of Plaintiffs.

Richard Snyder, Esq., on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on June 12, 2001, on Defendants' Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c). (Doc. No. 35.) The motion has been referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, this Court recommends that Defendants' Motion to Dismiss be granted in part and denied in part.

FILED JUN 29 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. BACKGROUND

Defendant Northstar Fire of America is a contractor and subcontractor in the automatic fire sprinkler industry. (Compl. ¶ 5.) Plaintiff Road Sprinkler Fitters Local Union No. 669 ("Union") entered into a series of collective bargaining agreements ("CBA") with Defendant Northstar Fire of America and other related Northstar entities (collectively referred to as "Defendants"). (Compl. ¶ 11.) According to the CBA, Defendants were required to pay the four individual Plaintiffs, and other Union employees, a specified wage rate for overtime work and to make contributions to the National Automatic Sprinkler Industry Pension, Welfare, Education, and S.I.S. funds ("NASI funds") for each hour of work and overtime work. (Compl. ¶¶ 5, 11; Snyder Decl., Doc. No. 37, CBA Attach.)

Plaintiffs allege that, since 1988, Defendants have fraudulently compensated their employees in the form of lump sum payments for performing overtime work, fraudulently documented such payments as expense or subsistence reimbursement payments rather than as wages for overtime worked, and filed and sent fraudulent tax forms with the intent to: (1) avoid making wage payments to employees as required by the FLSA; (2) avoid making fringe benefit contributions as required by ERISA; (3) avoid payment of social security, and federal and state taxes; (4) cause the Union to lose revenues derived from overtime work performed, and (5) divert the assets of the NASI funds for their own use by misappropriating hourly contributions. (Compl. pp. 3-4; ¶ 12.)

Plaintiffs bring these allegations pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 et seq. Plaintiff Union brings this action on its own behalf and on behalf of its members

who are, or have been employed by Defendants. (Compl. ¶ 3.) The individual Plaintiffs bring this action on behalf of themselves and other similarly situated employees of Defendants. (Compl. ¶ 4.)

## II. STANDARD

Defendants seek to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c). (Doc. No. 35.) Defendants may bring a Rule 12(c) motion for judgment on the pleadings, after the close of the pleadings, to raise various Rule 12(b) defenses regarding procedural defects. The Court applies the standard applicable to the corresponding 12(b) motion. Fed. R. Civ. P. 12(c) and 12(h)(2); St. Paul Ramsey County Medical Center v. Pennington County, S.D., 857 F.2d 1185, 1187 (8th Cir. 1988).

In considering a Rule 12(b)(6) motion to dismiss, the Court assumes all facts alleged in the complaint as true. Hishon v. 799 King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984). All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996). Dismissal is appropriate only if "it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).

"When considering a motion for judgment on the pleadings . . . the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, . . . as well as materials that are necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (quotations omitted). The Collective Bargaining Agreement and the Trust Agreement are directly at issue in this case, are embraced by the pleadings, and will be considered by the Court

in conjunction with this motion. (Snyder Decl., Doc. No. 37, Attach. CBA; Supp. Snyder Decl, Doc. No. 49, Attach.)

## III. ANALYSIS

### A. COUNT ONE: FLSA

Count One alleges that Defendants failed to make overtime payments in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207(a), and § 215(a)(2). Defendants seek to dismiss the Union from Count One of the Complaint, arguing that (1) the Union is not an applicable "employee" under the FLSA, and (2) the Union can not maintain a representative action under the FLSA on behalf of its members. 29 U.S.C. § 216(b); see also United Food & Commercial Workers Union, Local 1564 of New Mexico v. Albertson's, Inc., 207 F.3d 1193, 1198 (10th Cir. 2000) (noting that unions lack standing to bring representative suits on behalf of their members under the FLSA).

The Complaint does not specify if Count One is made by the individual Plaintiffs exclusively, or together with the Plaintiff Union. Plaintiffs clarify this issue in their response by stating that: "Defendants assert, correctly, that Local 669 cannot bring an FLSA case in its own name, and that individual employee consents to the FLSA suit are required, a proposition that is likewise not in dispute." (Pls.' Mem., Doc. No. 24, p. 3 n.1.) Therefore, the Court recommends that the Union be dismissed as a Plaintiff from Count One of the Complaint.

Defendants also seek to restrict the individual Plaintiffs from pursuing claims under Count One on behalf of anyone other than themselves. (Defs.' Mem, Doc. No. 36, pp.5-6.) The FLSA allows employees to maintain an action on behalf of "other employees similarly situated," but requires that each employee file a written consent with the Court in order to become a party.

29 U.S.C. 216(b). The four individual Plaintiffs have filed consents with the Court and purport to bring this action on behalf of themselves and other similarly situated employees. (Compl. ¶ 4.) The individual Plaintiffs are currently conducting discovery concerning other similarly situated employees and plan to send opt-in notices to these employees. Therefore, the Court recommends that the opt-in class not be restricted to only the four named Plaintiffs at this time.

### B. COUNT TWO: RICO CLAIMS

The Racketeer Influenced and Corrupt Organizations Act ("RICO") prohibits participation and conspiracy to participate in a pattern of "racketeering activity," and defines "racketeering activity" to include any act which is indictable under a number of enumerated offenses listed in the statute. 18 U.S.C. §§ 1961, 1962. Plaintiffs allege that Defendants were engaged in racketeering activity that includes mail fraud in violation of 18 U.S.C § 1341 and embezzlement from pension and welfare funds in violation of 18 U.S.C. § 664. (Compl. ¶ 26.)

#### 1. MAIL FRAUD CLAIMS

Plaintiffs assert that Defendants mailed false remittance reports and tax forms in furtherance of a scheme to: (1) avoid payment of proper wages and benefit contributions in violation of FLSA; (2) defraud the federal and state governments of taxes; (3) cause the Union to lose revenues that were based on the number of hours worked; and (4) mail false remittance forms to the NASI funds.[1] (Compl. ¶¶ 10, 12, 26(a), 26(b).) Defendants seek to dismiss the mail

---

[1]Plaintiffs also allege that Defendants converted NASI benefits after filing false remittance forms in violation of 18 U.S.C. § 664. (Compl. ¶ 26(c)). Because embezzlement from a trust fund is a separate predicate act under RICO, the Court will address the issue of filing false remittance forms with the NASI funds here as part of Plaintiffs' mail fraud allegations and later as a separate RICO allegation involving embezzlement.

fraud claims arguing, inter alia, that (1) the mail fraud claims are preempted by federal law and (2) Plaintiffs lack standing to bring a RICO mail fraud claim alleging tax fraud on behalf of the state and federal governments.

### a. PREEMPTION

First, Defendants argue that the mail fraud claims are preempted by federal law and should be dismissed. Defendants argue that Plaintiffs' RICO claims are properly characterized as labor disputes that require settlement by the National Labor Relations Board ("NLRB"). (Defs.' Mem., Doc. No. 36, p. 7.) Congress created the NLRB to settle labor disputes and its jurisdiction over such matters is almost totally exclusive. Brennan v. Chestnut, 777 F. Supp. 1469, 1473 (D. Minn. 1991). The NLRA "preempts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the [National Labor Relations] Act." Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge, 403 U.S. 274, 276, 91 S.Ct. 1909, 1913, 29 L.Ed.2d 473 (1971) (discussing the preemption doctrine set out in San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)). However, Garmon preemption does not apply if: (1) Congress has expressly carved out an exception to the NLRB jurisdiction; (2) the regulated activity is merely a peripheral concern of the labor laws; or (3) the regulated activity touches interests deeply rooted in local feeling. Vaca v. Sipes, 386 U.S. 171, 179-80, 87 S. Ct. 903, 911, 17 L.Ed.2d 842 (1967).

Plaintiffs are correct that mail fraud is a predicate act under RICO, but since mail fraud is "generic" in nature, and the mail fraud statutes do not define fraud, the Court must look to other laws for guidance. Brennan, 973 F.2d at 644. The Eighth Circuit has adopted the reasoning of Butchers' Union, Local No. 498 v. SDC Inv., Inc., 631 F. Supp. 1001 (E.D. Cal. 1986) in

determining if Garmon preemption applies to RICO mail fraud claims. See id. at 646. In Butchers' Union, the court stated that where a "plaintiff seeks to provide as predicate acts conduct indictable under the mail or wire fraud provision, which otherwise falls within the exclusive jurisdiction of the NLRB, it is likely . . . to be preempted by the labor law." Butchers' Union, 631 F. Supp. at 1010.

Two of Plaintiffs' mail fraud claims fall within the Garmon preemption doctrine as described by the Butchers' court: first, Plaintiffs' RICO mail fraud claim based on an alleged scheme to cause the Union loss of revenues, and second, the alleged mail fraud scheme to falsely remit forms to the NASI funds. Both these claims are predicated upon violations of rights and obligations that are contained in the CBA and ERISA. See Advanced Lightweight Concrete Co., 779 F.2d 487, 504 (9th Cir. 1985) (because labor law was central to the evaluation of whether the employer was liable under ERISA, the claims were preempted). In order to analyze whether the Union was fraudulently deprived of revenues or whether Defendants filed false remittance reports with NASI that were not in conformance with the CBA, this Court would need to review the CBA and assess the obligations and rights created therein. Such an examination would involve issues of labor law, which fall within the province of the NLRB, and as such are preempted.

Plaintiffs contend that Garmon preemption does not apply to the mail fraud claims, "[i]f the activities alleged in a RICO claim involving a labor entity are such that they would obviously be illegal under any and all circumstances and involving any and all perpetrators, the matter is not so tied to labor law as to make preemption necessary." MHC v. In't Union, United Mine Workers of America, 685 F.Supp. 1370, 1378 (E.D. Ky 1988) (noting that murder and

destruction of property would be illegal whether or not there was a labor motive and therefore not preempted); see also Teamsters Local 372 v. Detroit Newspapers, 956 F. Supp 753, 761 (E.D. Mich. 1988) (assault, robbery, arson, and destruction of property are clearly illegal activity separate from labor law violations). However, the MHC and Teamsters cases involved independent criminal activity such as assault, murder, and destruction of property. The courts in MHC and Teamsters were not required to look to the NLRA to determine if the alleged conduct was illegal. Here there is no such clearly independent illegal conduct, but rather the alleged conduct is only illegal with reference to federal labor laws. Importantly, both the MHC and Teamsters courts deferred to NLRB jurisdiction for all claims that were "arguably" protected or prohibited by the NLRA. Teamsters, 956 F.Supp. at 761-62; MHC, 685 F. Supp. at 1378 ("if there is any question at all about the legality of an action alleged as a predicate act, the action is so tied to labor law as to require preemption to the NLRB.").

Although Plaintiffs' RICO mail fraud claims relating to Union revenues and NASI remittance forms are preempted, Plaintiffs' other mail fraud claims based on FLSA violations and tax fraud do not fall within Garmon preemption. Notwithstanding the strong policies encouraging NLRA arbitration of labor disputes, different considerations apply to an employee's claim based on rights arising under the FLSA. See Barrentine v. Arkansas, 450 U.S. 728, 737, 101 S. Ct. 1437, 1443, 67 L.Ed.2d 641 (1981) (holding that employees could maintain an FLSA claim in federal district court because Congress had granted employees a right separate from the rights protected under the CBA). The RICO mail fraud claims relating to FLSA violations do not require the Court to seek guidance from the CBA, but rather provide an independent basis for

Plaintiffs' allegations. Similarly, Plaintiffs' claims of mail fraud based on tax law violations do not require the Court to rely solely on the CBA or labor law in determining the legality of the allegations.

Therefore, the Court recommends that Defendants' Motion to Dismiss the RICO mail fraud claims based on federal preemption grounds be granted in part and denied in part. Plaintiffs' RICO mail fraud claims based on lost Union revenues and NASI remittance forms should be dismissed due to preemption, but Plaintiffs' RICO mail fraud claims based on FLSA claims and tax fraud claims should not.

### b. STANDING TO PURSUE THE RICO MAIL FRAUD CLAIM ALLEGING TAX FRAUD

Defendants next argue that Plaintiffs do not have standing to raise a RICO mail fraud claim alleging tax fraud on behalf of state and federal governments. The Complaint alleges that Defendants fraudulently caused the "mailing of false federal and state tax returns through the interstate mail." (Compl. ¶ 17.) Defendants argue that only the government can bring a claim for tax fraud violations, unless there is specific authorization for a qui tam action. Under the qui tam provisions of the federal False Claims Act, individuals can sue on behalf of the government to prosecute individuals or entities that have defrauded the federal government. 31 U.S.C. § 3730. Section 3730 of the FCA authorizes private citizens to bring actions on behalf of the government for civil damages resulting from violations of 31 U.S.C. § 3729. However, if there has been no violation of § 3729, no cause of action under § 3730 exists.[2]

---

[2]Section 3729 generally prohibits any person from defrauding the government by false claims, records or statements. 31 U.S.C. § 3729.

RICO contains no qui tam provisions, nor is it referenced in § 3729 as an actionable qui tam action. 18 U.S.C. § 1964(c); 31 U.S.C. § 3729; U.S. ex rel. Kalish v. Desnick, 1992 WL 32185, *2 (N.D.Ill 1992). Furthermore, Congress has specifically excluded "claims, records or statements made under the Internal Revenue Code of 1954" from coverage under section 3729. 31 U.S.C. § 3729(e); see also Hardin v. DuPont Scandinavia (ARA-JET), 731 F.Supp. 1202, 1204 (S.D.N.Y. 1990) (discussing the legislative history of the 1986 amendment to § 3729(e) indicating that Congress removed all income tax cases from the scope of § 3729). Additionally, the Internal Revenue Code provides that "[n]o civil action for the collection or recovery of taxes ... shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General ... directs that the action be commenced." 26 U.S.C. § 7401.

Thus, actions to recover income taxes are not authorized by the qui tam provisions of § 3730. Nor have Plaintiffs provided the Court with any state law authority that would allow them to proceed on behalf of the state government for the collection of taxes. Because Plaintiffs lack standing to bring a mail fraud claim based on tax fraud on behalf of state or local governments, the Court recommends that this claim be dismissed.

**2. EMBEZZLEMENT CLAIM**

Plaintiffs allege that Defendants, on two or more occasions, knowingly failed to make benefit contributions to the NASI Funds as required by the CBA and ERISA. Plaintiffs contend that Defendants' conduct constitutes embezzlement within the meaning of 18 U.S.C. § 664 and thus is a "predicate act" of racketeering activity as defined in Section 1961(1) of RICO. Section 664 provides:

> Any person who embezzles, steals, or unlawfully and willfully

> abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both.

18 U.S.C. § 664. Defendants seek to dismiss Plaintiffs' embezzlement claim, arguing, inter alia, that Plaintiffs lack standing to bring a claim for embezzlement of NASI funds and, in the alternative, Plaintiffs' RICO embezzlement claim would be subject to mandatory arbitration.

**a. STANDING**

Defendant argues that neither the individual Plaintiffs nor the Union have standing to bring a RICO claim based on the alleged embezzlement of the NASI funds in violation of 18 U.S.C. § 664. (Defs.' Mem., Doc. No. 36, p. 15.) RICO does not allow all factually injured plaintiffs to recover, but instead embraces a proximate cause analysis, that is a "direct relation between the injury asserted and the injurious conduct alleged." Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 266-68, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). For the RICO pattern or acts to proximately cause an injury, the action must be a "substantial factor" in the sequence of responsible causation, and the injury must be reasonably foreseeable or anticipated as a natural consequence. Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23-24 (2d Cir.1990).

The Complaint alleges that Plaintiffs have been deprived of wages earned and fringe benefits derived from contributions due to NASI. (Compl. ¶ 21.) In addition, the embezzlement scheme is alleged to have directly caused the Union loss of revenue. (Compl. ¶ 21.) In construing these allegations in the light most favorable to the Plaintiffs, the Court finds that Plaintiffs have alleged sufficient direct injury to invoke standing to bring a RICO claim alleging embezzlement

of the NASI funds in violation of 18 U.S.C. § 664. Therefore, the Court recommends that Defendants' Motion to Dismiss the embezzlement claim for lack of standing should be denied.

**b. ARBITRATION**

Defendants argue that Plaintiffs' RICO embezzlement claim is subject to the mandatory grievance and arbitration procedure of the CBA. (Defs.' Mem., Doc. No. 36, p. 16, n.1.) The Grievance Procedures and Arbitration section of CBA states that "[a]ll disputes and grievances relative to the interpretation or application of the Agreement" shall be resolved by an arbitrator. (Snyder Decl, Doc. No. 37, Attach. p. 21-22.)

Defendants rely on Shearson/American Express v. McMahon, in arguing that RICO claims are subject to arbitration. 482 U.S. 220, 107 S. Ct. 2332, 96 L.Ed.2d 185 (1987). In Shearson, the plaintiffs had agreed to arbitrate "any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof." Id. at 223, 107 S. Ct. at 2336. The Supreme Court held that the plaintiffs had bargained to arbitrate all claims, including statutory claims such as RICO, relating to their accounts, and that plaintiffs would be required to arbitrate those claims. Id. at 244, 107 S. Ct. at 2346.

Here, Plaintiffs have agreed to arbitrate all claims that require the "interpretation or application of the Agreement." (Snyder Decl, Doc. No. 37, Attach. p. 21-22.) The Court finds that the resolution of the RICO embezzlement claim, asserting violations of 18 U.S.C. 664, does not turn on the interpretation of the CBA. Rather, Plaintiffs' RICO claim alleging embezzlement of funds, finds its strength in the criminal embezzlement provision of 18 U.S.C. 664. The Court will focus on the interpretation of section 664, not on the labor law obligations agreed on by the parties in the CBA, in analyzing Plaintiffs' claim; the terms of the CBA are merely of secondary

importance in analyzing such a claim. Plaintiffs' RICO embezzlement claim falls outside the scope of the limited agreement to arbitrate disputes involving the interpretation of the CBA. Accordingly, the Court finds that Plaintiffs are not subject to mandatory arbitration of the RICO embezzlement claim. Therefore, the Court recommends that Defendants' Motion to Dismiss Plaintiffs' RICO embezzlement claim due to mandatory arbitration be denied.

### 3. ADEQUACY OF THE PLEADINGS

To sustain RICO's pleading burden under § 1962(c), a plaintiff must sufficiently allege (1) that the defendant (2) through a commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly ... participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983) (quoting 18 U.S.C. § 1962(a)-(c)). Defendants assert that Plaintiffs' RICO allegations are insufficient and should be dismissed because Plaintiffs failed to: (1) plead both the mail fraud and embezzlement claims with particularity; (2) properly allege a "pattern of racketeering activity," and (3) distinguish between RICO enterprise and liable persons.

#### a. PLEADING FRAUD

##### i. MAIL FRAUD CLAIMS

Defendants argue that the RICO mail fraud claims should be dismissed for failure to plead fraud with particularity.[3] Mail fraud requires two elements "(1) having devised or intending to devise a scheme to defraud(or to perform specified fraudulent acts), and (2) use of

---

[3] Because the Court has recommended that all of Plaintiffs' RICO mail fraud claims be dismissed except for the mail fraud claim alleging fraud in violation of the FLSA, the Court will review the sufficiency of the pleading as to the RICO-FLSA claim only.

the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts." Carter v. United States, 530 U.S. 255, 261, 120 S.Ct. 2159, 2165, 147 L.Ed.2d 203 (2000). The term "to defraud" in this context has the "common understanding" of "wronging one in his property rights by dishonest methods or schemes and usually signif[ies] the deprivation of something of value by trick, deceit, chicane or overreaching." McNally v. United States, 483 U.S. 350, 358, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987) (quotation omitted).

Heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to allegations of mail fraud in a civil RICO complaint. Murr Plumbing v. Scherer Bros. Financial Services, 48 F.3d 1066 (8th Cir. 1995). In determining the sufficiency of the pleadings the court must consider "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir. 1982).

The Complaint has met this burden by alleging the following facts: Defendants were required by the CBA to pay Plaintiffs a specified wage rate for overtime worked (Compl. ¶ 11); Plaintiffs worked in excess of the maximum hours required under the FLSA, but payments were not made at a rate of time and one half for those hours (Compl. ¶¶ 17, 22); instead of paying employees this wage rate, Defendants compensated their employees in the form of lump sum payments for performing overtime worked (Compl. p. 3; ¶ 12); Defendants improperly documented the payments as expense or subsistence reimbursement payments rather than as wages for overtime worked as required (Compl. p. 3); since 1998, Defendants have knowingly filed, and sent through the mail, false remittance forms and tax forms documenting these intentional mischaracterizations (Compl. p. 4. ¶ 13); the deprivation of earned wages has

occurred continuously over a period of two years (Compl. ¶ 21); Defendants sent monthly reports to the NASI funds confirming that the contribution information based on hours worked was correct (Compl. ¶ 13); and the submission and the preparation of the remittance form and other false tax forms was under the direct supervision and control of Defendants R. Colin Barnett and Sean P. Barnett (Compl. ¶ 15.).

These facts sufficiently identify the time, place, and speaker of the fraudulent mail scheme. The Court finds that Plaintiffs' allegations are not merely conclusory, as Defendants allege, but rather support a strong inference of fraud. Therefore, the Court recommends that Defendants' Motion to Dismiss the RICO mail fraud claims for failure to plead fraud with particularity be denied.

**ii. EMBEZZLEMENT CLAIM**

Defendants also argue that the RICO claim based on a "fraudulent scheme" to embezzle NASI funds fails to plead fraud with particularity and should be dismissed. (Defs.' Mem., Doc. No. 36, p. 17.) Section 664 provides:

> Any person who embezzles, steals or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan . . . shall be fined not more than $10,000, or imprisoned for not more than five years, or both.

18 U.S.C. 664. The elements of a Section 664 embezzlement claim include: (1) the unauthorized; (2) taking or appropriation; (3) of union benefit plan funds; (4) with specific criminal intent. United States v. Andreen, 628 F.2d 1236, 1240-41 (9th Cir.1980). Under § 664, a plaintiff must, at a minimum, sufficiently plead "fraudulent intent." DeLaurentis v. Job Shop

Technical Services, Inc., 912 F.Supp. 57, 64 (E.D.N.Y. 1996).

In addition to alleging all of the above facts in support of both the RICO mail fraud and embezzlement claims, the Complaint alleges the following additional facts in support of the embezzlement claim: Defendants were required to make contributions to the funds for each hour worked by the employees (Compl. 11); Defendants did not make contributions to funds based on the hours worked because they documented the payments as subsistence reimbursement rather than wages (Compl. p. 3, ¶ 12); Defendants structured payment to employees to avoid paying the NASI funds (Compl. ¶ 12.); Defendants deliberately under-reported hours worked (Compl. ¶ 13); and Defendants diverted and converted NASI funds by misappropriating hourly contributions due to the funds (Compl. p. 4; ¶ 26(c)).

The Court finds that these facts sufficiently allege an unauthorized taking of union funds with the intent to defraud. Therefore, the Court recommends that Defendants' Motion to Dismiss the RICO embezzlement claim for failure to plead fraud with particularity should be denied.

**b. ASSETS OF THE PLAN**

Defendants argue that the RICO embezzlement claim is also deficient, even if properly alleged, because a mere obligation to pay contributions creates a debt to the plan, not assets to the plan, and therefore can not provide the basis for a claim under section 664. (Defs.' Mem., Doc. No. 36, pp. 17-18.) Defendants rely on Young v. West Coast Indust. Relations Association, Inc., for the proposition that failure to pay contributions due to a plan, from an employer's own funds, can not constitute embezzlement. 763 F. Supp. 64, 74-76 (D. Del. 1991) (obligation to pay is a debt). However, the provision which governed the terms of the employer's

contributions in Young made no reference as to when monies paid into the fund were to vest. Id. Here, the Trust Agreement states that "[t]his Trust Fund consists of (1) such sums of money as have been or shall be paid to the Pension Fund by the Employers as contributions required by the Collective Bargaining Agreement." (Trust Agreement, Doc. No. 49, Attach. p. 6.) Defendants assert that this language, and the rest of Section 2, Article II, merely establishes that the Trust will be ongoing. (Defs.' Sur Reply, Doc. No. 48, p. 8 n. 2.) The Court disagrees. Although Article II does discuss the continuation of the Trust, Section 2 is entitled "Composition of Pension Trust Fund." The Court finds that the Trust Agreement contemplates that money due to the Trust Fund is considered part thereof, and that the Complaint alleges that such contributions were due and owing. Therefore, the Court recommends that Defendants' Motion to Dismiss the RICO embezzlement claim because the contributions were not "assets" of the plan be denied.

### c. PATTERN OF RACKETEERING ACTIVITY

Defendants next argue that the Complaint should be dismissed because Plaintiffs have failed to allege a "pattern" of racketeering activity under RICO. (Defs.' Mem., Doc. No. 36, p. 20.) Liability under RICO is premised on the commission of a "pattern of racketeering activity," defined by the statute as engaging in two or more related predicate acts of racketeering within a 10-year period. 18 U.S.C. § 1961(5). In order to show a "pattern of racketeering activity" a plaintiff must show both "relationship" and "continuity," that the racketeering predicates are related, and that they either constitute or threaten long-term criminal activity. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 230, 109 S.Ct. 2893, 2896, 106 L.Ed.2d 195 (1989). Predicate acts are "related" if they "have the same or similar purposes, results,

participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 n.14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). Continuity can be shown either through a series of related predicate acts extending over a substantial period of time or by past conduct which, by its nature, extends into the future. H.J. Inc., at 241-43, 109 S.Ct. at 2902.

The following allegations in the Complaint support Plaintiffs' allegations of a "pattern" of racketeering activity: Defendants' fraudulent conduct has been committed "since at least 1998" (Compl. ¶ 12); Defendants have committed the fraudulent schemes on a monthly and continuous basis (Compl. ¶¶ 21, 26(a)); Defendants' acts "have the same purpose to defraud the Plaintiffs, the NASI Funds and federal and state governments" (Compl. ¶ 26(e)). The Court finds that the Complaint sufficiently alleges that the RICO predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity. Therefore, the Court recommends that Defendants' Motion to Dismiss the Complaint for failure to allege a "pattern of racketeering activity" should be denied.

**d. ENTERPRISE**

As a final matter, Defendants argue that Plaintiffs have failed to make the required distinction between an "enterprise" and a "person" under RICO § 1962. Liability under RICO § 1962(c) requires that Plaintiffs allege and prove the existence of two distinct entities: (1) a "person;" and (2) an "enterprise." That liability "depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." Reves v. Ernst & Young, 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993).

The Complaint asserts that R. Colin Barnett and Sean P. Barnett are applicable "persons"

under RICO. (Compl. ¶ 24.) In addition, the Complaint alleges that the Barnetts are owners and officers of the Northstar entities, which, collectively are alleged to be a RICO enterprise. (Id. at ¶¶ 7, 8, 23.) Defendants argue that these facts violate the "distinctness" requirement of RICO because a corporation may only act through its agents, thereby destroying the distinctness between the person and the enterprise. (Defs.' Mem., Doc. No. 36; citing Minnesota Odd Fellows Home, 630 F. Supp. 797, 800 (D. Minn. 1986)).

In a recent United States Supreme Court case, Cedric Kushner Promotions, Ltd. v. King, decided June 11, 2001, the Supreme Court held that a "corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." 2001 WL 636199, * 3 (U.S. 2001). The Court clearly stated that RICO applies when a corporate employee unlawfully conducts the affairs of the corporation, regardless of whether the conduct was within the scope, or beyond the scope of corporate authority. Id. at * 4.

Given the Supreme Court's ruling in Cedric, this Court finds that the Complaint sufficiently alleges a distinct "person" and "enterprise" under RICO. Therefore, the Court recommends that Defendants' Motion to Dismiss the Complaint for failing to allege a meaningful distinction between the alleged "person" and "enterprise" be denied.

## IV. RECOMMENDATION

For the foregoing reasons, and based upon all of the files, records, and proceedings herein, it is hereby recommended that Defendants' Motion to Dismiss (Doc. No. 35) be **GRANTED IN PART AND DENIED IN PART** as follows:

**Count One: FLSA**

1. Defendants' Motion to Dismiss the Union from Count One of the Complaint be **GRANTED**;

2. Defendants' Motion to restrict the individual Plaintiffs from pursuing claims under Count One on behalf of anyone other than themselves be **DENIED**;

**Count Two: RICO Mail Fraud Claims**

1. Defendant's Motion to Dismiss the RICO mail fraud claims alleging FLSA violations be **DENIED**;

2. Defendants' Motion to Dismiss the RICO mail fraud claims alleging tax fraud be **GRANTED** and Plaintiffs' claim be **DISMISSED WITH PREJUDICE**;

3. Defendants' Motion to Dismiss Plaintiffs' RICO mail fraud claim alleging loss of Union revenue be **GRANTED** and Plaintiffs' claim be **DISMISSED WITH PREJUDICE**;

4. Defendants' Motion to Dismiss Plaintiffs' RICO mail fraud claim alleging false remittance forms be **GRANTED** and Plaintiffs' claim be **DISMISSED WITH PREJUDICE**;

**Count Two: RICO Embezzlement Claim**

1. Defendants' Motion to Dismiss the RICO embezzlement claim, which alleges a violation of 18 U.S.C. § 664, for lack of standing be **DENIED**;

2. Defendants' Motion to Dismiss Plaintiffs' RICO embezzlement claim due to mandatory arbitration be **DENIED**.

**Sufficiency of the Pleadings**

1. Defendants' Motion to Dismiss the RICO mail fraud claims for failure to plead fraud with particularity be **DENIED**;

2. Defendants' Motion to Dismiss the RICO embezzlement claim for failure to plead fraud with particularity be **DENIED**;

3. Defendants' Motion to Dismiss the Complaint for failure to allege embezzlement of "assets" of a Trust plan be **DENIED**;

4. Defendants' Motion to Dismiss the Complaint for failure to allege a "pattern of racketeering activity" be **DENIED**;

5. Defendants' Motion to Dismiss the Complaint for failure to allege a meaningful distinction between the RICO "person" and the RICO "enterprise" be **DENIED**.

Dated: June 29, 2001

SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation within 10 days after being served with a copy thereof. The objecting party must file with the Clerk of the Court and serve on all parties, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.